UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CHAUNCEY GIRARD,

                                    Plaintiff,

      -against-

DEP. COLLAO, SUPT. THOMAS GRIFFIN, LT.
MURPHY, C.O. STAPLES, DR. KOROBKOVA,
DR. ROBERT BENTIVEGNA, K. SWAIN
International Steward, and SGT. ECKERSON,

                                    Defendants.

---

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __8/13/2020__
```

No. 18-CV-2026 (NSR)
 OPINION & ORDER

**NELSON S. ROMÁN, United States District Judge**

Plaintiff Chauncey Girard ("Plaintiff"), currently incarcerated at Southport Correctional Facility ("SCF"), brings this *pro se* action pursuant to 42 U.S.C. § 1983 ("Section 1983") against two medical professionals, Dr. Robert Bentivegna ("Bentivegna") and Dr. Korobkova (collectively, the "Medical Defendants"), and six prison personnel, Dep. Collao, Supt. Thomas Griffen ("Griffen"), Lt. Murphy, C.O. Staples, K. Swain International Steward ("Swain"), and Sgt. Eckerson (together with the Medical Defendants, the "Defendants"). Plaintiff alleges violations of his constitutional rights while incarcerated at Green Haven Correctional Facility ("Green Haven"). On September 17, 2019, Plaintiff filed a Second Amendment Complaint (the "SAC") (ECF No. 42), which is the operative complaint in this action. Before the Court is Defendants' motion to dismiss the SAC under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)"). (ECF No. 50.) For the following reasons, Defendants' motion is GRANTED.

## BACKGROUND

The following facts, taken from the SAC and the factual allegations in Plaintiff's opposition papers, which the Court may consider for a *pro se* party, are accepted as true for the purposes of

this motion. *See Rodriguez v. Rodriguez*, No. 10-CV-891, 2013 WL 4779639, at *1 (S.D.N.Y. July 8, 2016); *Torrico v. Int'l Bus. Machs. Corp.*, 213 F. Supp. 2d 390, 399 n.4 (S.D.N.Y. 2002).

The conduct that forms the basis of the SAC occurred at Green Haven from approximately September 26, 2016 to March 2018. (SAC 5; Opp. 18.) Plaintiff alleges that the Medical Defendants, Dep. Collao, and Supt. Griffen were deliberately indifferent to his medical needs and thus violated his Eighth Amendment right to be free from cruel and unusual punishment and his right to adequate medical care. (SAC 8.) Furthermore, Plaintiff brings First Amendment retaliation claims against Defendants Staples, Griffen, and Korobkova along with a mishandling of prison grievances claim against Defendant Eckerson. Construing Plaintiff's pleadings liberally, Plaintiff also asserts a First Amendment denial of access to courts claim against Defendant Swain and Fourth Amendment false confinement claim against Defendants Staples, Murphy, and Eckerson.

Plaintiff is afflicted with a left shoulder injury, back injury, and stomach injury, all of which he suffered on December 23, 2014, prior to his arrival at Green Haven. (SAC 5-6.) At Green Haven, Plaintiff also allegedly contracted an H-Pylori infection. (SAC 8.) These conditions prevent him from engaging in activities with the capabilities of "a normal person." (SAC 9.)

On September 26, 2016, Plaintiff asked Defendants Korobkova and Griffen "to receive MRI results to receive treatment," but Defendant Korobkova did not provide him with the results. (SAC 5.) Plaintiff filed a grievance against Defendant Korobkova and alleges that he was later denied sick call in retaliation for this. (*Id.*; Pl.'s Mem. of Law in Supp. Of Opp'n ("Opp."), ECF No. 52, Ex. A, at 8.) After filing another grievance, Plaintiff was given his MRI results. (*Id.*) He received surgery on his left shoulder on February 23, 2017 and was prescribed physical therapy for recovery. (*Id.* at 6; Opp. 3.) Plaintiff also requested without success that Defendant Korobkova provide him with a medical permit exempting him from wall "searches." (*Id.*) For these searches, Plaintiff was put against a wall during recreation, which he alleges permanently damaged his

shoulder by reducing its range of motion. (*Id.*)

On December 15, 2016, Defendant Korobkova learned of Plaintiff's "lower back degeneration and spasms" but denied him physical therapy. (SAC 6; Opp. 3.) Defendant Korobkova also purportedly refused to treat Plaintiff's stomach injury, which he reported to her on October 25, 2016. (SAC 6.) Although the injury makes him "spit up blood," Defendant Korobkova allegedly told him that he had "nothing wrong." (*Id.*) Defendant Bentivegna similarly did not provide treatment, remarking only, "none of your providers appear to have been able to solve your issue." (SAC 7.)

Plaintiff filed grievances against the Medical Defendants alleging lack of treatment. Defendant Staples then "retaliated" against Plaintiff by "falsely" putting him in keeplock from December 12, 2017 until January 13, 2018. (*Id.*) Plaintiff contends that, during his confinement, Defendant Staples denied him sick call on five different dates in retaliation for a grievance Plaintiff filed on August 30, 2017. (SAC at 8; Opp. 20.) Plaintiff claims that Defendant Murphy knew that Plaintiff's confinement was illegitimate but "still made judgement to falsely confine" him. (SAC 7.)

On December 14, 2017, Plaintiff filed a complaint against Defendant Staples alleging false confinement, which Defendant Eckerson closed on January 5, 2018 after interviewing Plaintiff and investigating his claims. (Opp. Ex. G, at 20.) Plaintiff asserts that Defendant Eckerson never interviewed him and that he was not given an opportunity to be heard. (*Id.*; SAC 7.)

While in keeplock, Plaintiff developed an H-Pylori infection that "irritated" his stomach injury, causing "more pain." (SAC 8.) He notified Defendants Griffen and Collao, but they refused to help, informing him that "usually there's no sick call on keeplock." (*Id.*) Plaintiff filed a grievance alleging inadequate treatment of his stomach problems on February 12, 2018. (*Id.* at 14.)

Plaintiff attempted to resolve some of the above-mentioned issues so as to receive medical care by informing the Attorney General, but he was "denied access to the courts" because Defendant Swain "forgot to mail out . . . [his] Certified Mail Receipt." (SAC 8.) This incident occurred in November 2016, prior to many of Plaintiff's allegations. (Opp. Ex. H, at 18-19.)

Plaintiff claims that he is suffering from "excruciating pain and anguish" as well as "mental anguish" from his untreated injuries. (SAC 9.) Because of his shoulder injury, he cannot take part in various recreational activities "as a normal person can with his children." (*Id*.) His back injury has forced him to change his "walking pattern," and it now takes him "5-10 minutes at times to get out of bed." (*Id*.) Moreover, his stomach injury causes him to spit up blood after "any sudden movements," and he claims he has a lacerated kidney that needs to be drained. (*Id*.)

## DISCUSSION

### I.   Standard of Review

#### A.   Rule 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff's complaint must allege nonconclusory facts that, taken as true, "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plaintiff's factual allegations must "[nudge] [his or her] claims across the line from conceivable to plausible." *Id*., 550 U.S. at 570. A claim is plausible when the pleaded facts enable the court to draw a reasonable inference that the defendant is liable for the alleged conduct. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). The pleadings must offer more than "labels and conclusions" and "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

When evaluating a Rule 12(b)(6) motion to dismiss, it is well established that, in addition to "the facts as asserted within the four corners of the complaint," a court can consider "any documents incorporated in the complaint by reference." *Peter F. Gaito Architecture, LLC v.*

*Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010) (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007)); *see also DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) ("In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint . . . and documents incorporated by reference in the complaint."). A court may also consider "documents either in [a] plaintiff['s] possession or of which [a] plaintiff[] had knowledge and relied on in bringing suit." *Brass v. American Film Tech.*, 987 F.2d 142, 150 (2d Cir. 1993).

Courts must construe *pro se* complaints more liberally, only dismissing for failure to state a claim if it is "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). This is especially true when a plaintiff alleges civil rights violations. *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004). As such, for *pro se* plaintiffs faced with a motion to dismiss, "it is appropriate to consider 'materials outside the complaint to the extent that they are consistent with the allegations in the complaint.'" *Ceara v. Deacon*, 68 F. Supp. 3d 402, 405 (S.D.N.Y 2014) (quoting *Alsaifullah v. Furco*, No. 12 Civ. 2907(ER), 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013)).

Correspondingly, a court may consider "factual allegations made by a *pro se* plaintiff in opposition papers" as well as "documents that a pro se litigant attaches to his opposition papers." *Baskerville v. Blot*, 224 F. Supp. 2d 723, 732 (S.D.N.Y. 2002) (citing *Gill v. Mooney*, 824 F.2d 192, 195 (2d Cir. 1987)); *Ceara*, 68 F. Supp. 3d at 405 (quoting *Agu v. Rhea*, No. 09-CV-4732 (JS)(AKT), 2010 WL 5186839, at *4 n. 6 (E.D.N.Y. Dec. 15, 2010)); *see also Odom v. Calero*, No. 06 Civ. 15527(LAK)(GWG), 2008 WL 449667, at *1 (S.D.N.Y. Feb. 19, 2008) ("[T]he mandate to read the papers of *pro se* litigants generously makes it appropriate to consider plaintiff's additional materials, such as his opposition memorandum") (quoting *Gadson v. Goord*, 1997 WL

714878, No. 96 Civ. 7544(SS), at *1, n.2 (S.D.N.Y. Nov. 17, 1997)); *Rodriguez v. Rodriguez*, No. 10-CV-891, 2013 WL 4779639, at *1 (S.D.N.Y. July 8, 2016); *Torrico v. Int'l Bus. Machs. Corp.*, 213 F. Supp. 2d 390, 399 n.4 (S.D.N.Y. 2002).

Even with this liberal standard, "a *pro se* complaint must state a plausible claim for relief." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013). A court's "duty to liberally construe a plaintiff's complaint [is not] the equivalent of a duty to re-write it." *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (internal citations and alternations omitted).

### B.    Section 1983

Under Section 1983, "[e]very person who, under the color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." Section 1983 does not itself grant substantive rights; rather, it is "a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes it describes." *Baker v. McCollan*, 433 U.S. 137, 144 n.3 (1979); *see Paterson v. Cty. of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004). The plaintiff must allege that: "(1) the defendant acted under color of state law and (2) as a result of the defendant's actions, the plaintiff suffered a denial of [his] federal statutory rights, or [his] constitutional rights or privileges." *Annis v. Cty. of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998).

### II.    Deliberate Indifference to Medical Needs Claims

Defendants contend that Plaintiff's deliberate indifference claims against the Medical Defendants and Defendants Collao and Griffen should be dismissed because Plaintiff does not plead that he had a serious medical need or that Defendants were aware of his suffering. Defendants also assert that disagreements over courses of treatment do not amount to constitutional violations and that Plaintiff's remaining allegations are vague and conclusory. (Def.'s Mem. of Law in Supp.

of Dismissal ("Mot."), ECF No. 51, at 6-7); Def.'s Reply Mem. of Law in Supp. of Dismissal ("Reply"), ECF No. 58, at 1-3.) This Court agrees.

The Eighth Amendment guarantees protection from "cruel and unusual punishment." U.S. Const. amend. VIII. As such, the government cannot inflict "unnecessary and wanton . . . pain" on individuals. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). Deliberate indifference to an inmate's medical needs is considered an unnecessary and wanton infliction of pain and gives rise to an Eighth Amendment claim. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Such a claim is subjected to a dual-pronged analysis for which a plaintiff must allege (1) that he or she had an objectively "serious medical need" and (2) that the defendant "act[ed] with a sufficiently culpable state of mind" and was deliberately indifferent to his or her suffering. *Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000); *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006).

To satisfy the first objective prong, a plaintiff's serious medical need must be one around which "a condition of urgency [exists]," such that it "may produce death, degeneration, or extreme pain." *Hathaway v. Coughlin*, 99. F.3d 550, 553 (2d Cir. 1996). Factors relevant to determining whether a serious medical need exists include "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (citing *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992)). Where the "offending conduct" is a delay or interruption in a course of treatment rather than a failure to provide treatment, courts evaluate the seriousness of a plaintiff's medical need by assessing "the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone." *Salahuddin*, 467 F.3d at 280 (quoting *Smith v. Carpenter*, 316 F.3d 178, 185 (2d Cir. 2003)). A plaintiff "must make an 'objective' showing that the *deprivation* was 'sufficiently serious,' or that the result of defendant's

denial was sufficiently serious." *Smith*, 316 F.3d at 186 (quoting *Montgomery v. Pinchak*, 294 F.3d 492, 499 (3rd Cir. 2002)). Courts especially emphasize the seriousness of the medical repercussions precipitated by the delay in treatment. *Id*. at 187.

A plaintiff satisfies the second subjective prong by showing that the defendant "kn[ew] of and disregard[ed] an excessive risk to inmate health." *Farmer v. Brennan,* 511 U.S. 825, 837 (1994). In other words, a defendant must have been "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [he or she] must also [have drawn] the inference." *Id*. No liability accrues, however, if a prison official "responded reasonably to the risk, even if the harm . . . was not averted." *Id*. at 844. Similarly, disagreement over a course of treatment does not give rise to a deliberate indifference claim if the provided treatment is "adequate." *Chance*, 143 F.3d at 703. In all cases, deliberate indifference entails more than negligent conduct, requiring criminal recklessness by the defendant official. *Salahuddin*, 467 F.3d at 280.

Plaintiff asserts both failure to treat and delay in treatment claims. None of these claims support a finding that Defendants violated Plaintiff's Eighth Amendment rights.

### A.   Defendant Korobkova

In his pleadings, Plaintiff asserts that Defendant Korobkova was deliberately indifferent to his medical needs because she (a) delayed in providing him MRI results for his shoulder, (b) failed to give him a post-surgery medical permit exempting him from wall searches, and (c) did not treat prior back and stomach injuries. (SAC 5-6; Opp. 2-3.)

#### 1.   *Delay in Providing MRI Results*

Plaintiff alleges that Defendant Korobkova delayed in providing his MRI results on September 26, 2016 "to receive treatment" for his shoulder injury, though he subsequently received the results and underwent surgery. (Opp. 2.) The MRI itself occurred at Great Meadow Correctional Facility ("Great Meadow"), not Green Haven. (*Id*., Ex. B, at 10.) Moreover, the

attending doctor was "not sure what [was] going on" and recommended that Plaintiff see a "shoulder specialist." (*Id.*)

Plaintiff's alleged facts do not satisfy either prong of the deliberate indifference test. Regarding the objective prong, Plaintiff still received surgery, and he does not claim that the delay either increased the severity of his injury or impacted the scope or efficacy of the procedure and thus was sufficiently serious. *See Thurmond v. Thomas-Walsh*, No. 18-CV-409 (KMK), 2019 WL 1429559, at *7 (S.D.N.Y Mar. 29, 2019) (motion to dismiss granted because plaintiff failed to allege that his skin condition worsened during a three-month period in which treatment was delayed). His alleged facts also do not indicate that Defendant Korobkova knew that withholding his MRI results would substantially harm him, especially considering that Plaintiff's initial doctor at Great Meadow could not establish a diagnosis. *See Smolen v. Fischer*, No. 12 Civ. 1856(PAC)(AJP), 2012 WL 3609089, at *12 (S.D.N.Y. Aug. 23, 2012) (granting motion to dismiss because the alleged facts did not show that defendant nurse was aware that denying medical tests to plaintiff after he inhaled toxins would cause him serious harm).

### 2. *Failure to Provide Medical Permit*

Plaintiff next claims that Defendant Korobkova failed to provide Plaintiff with a post-surgery medical permit exempting him from wall searches. He asserts that the repeated searches prevented his shoulder from "heal[ing] right after 2 sessions of physical therapy," resulting in a "permanent loss of range of motion." (Opp. 3.) Yet, Plaintiff's physical therapy report does not corroborate his connection of this loss of motion to the searches. (*Id.*, Ex. D, at 12.) Although Plaintiff did lose some range of motion in his shoulder, his symptoms nevertheless "improved from [their] pre-op[eration] status." *Id.* Beyond alleging generally that the wall searches resulted in wear and tear on his shoulder, Plaintiff also fails to describe how either their manner or duration aggravated his condition post-surgery. (Opp. 3.)

Whether a patient requires an exemption from an activity to allow an injury to heal is a decision concerning a course of treatment, and it is well established that "difference[s] of opinion between a prisoner and his doctors regarding . . . 'diagnostic techniques, forms of treatment, or the need for specialists or the timing of their intervention, are not adequate grounds for a Section 1983 claim.'" *Johnson v. Wright*, 234 F. Supp. 2d 352, 361 (S.D.N.Y 2002) (quoting *Sonds v. St. Barnabas Hosp. Corr. Health Serv.*, 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001)); *accord Marshall v. Lilley*, No. 19-CV-11829 (CM), 2020 WL 905989, at \*5 (S.D.N.Y. Feb. 21, 2020); *see also Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998). Plaintiff pleads no other facts to suggest that Defendant Korobkova's decision was anything different. Without more, Plaintiff does not allege sufficient facts to satisfy either prong of the deliberate indifference test.

### 3. *Treatment of Back and Stomach Injuries*

Plaintiff's claim against Defendant Korobkova regarding her treatment of his existing back injury also does not satisfy the deliberate indifference test. Plaintiff cites to x-ray results from November 21, 2016, which Defendant Korobkova ordered. Although the results show that Plaintiff suffers from muscle spasms as well as mild disc degeneration disease and mild anterior osteophytes at the L4-S1 vertebrae (Opp. Ex. E, at 13), Plaintiff alleges that Defendant Korobkova said there was "nothing wrong" with him. (*Id.* at 3; SAC 6.)

Even assuming Plaintiff's back injury is sufficiently serious, Plaintiff does not fulfill the subjective prong because he does not allege that Defendant Korobkova knew that the injury posed "an excessive risk" to Plaintiff's health and nevertheless disregarded that risk. *Farmer,* 511 U.S. at 837. Like the issuance of a medical permit, Defendant Korobkova's interpretation of the results of an x-ray that she ordered is a professional medical judgement involving "diagnostic techniques" and implicating "forms of treatment." *Johnson*, 234 F. Supp. 2d at 361 (quoting *Sonds*, 151 F. Supp. 2d at 303). As Plaintiff has failed to allege that Defendant Korobkova's evaluation

contradicted that of other medical professionals or was motivated by "ulterior motives," *Chance*, 143 F.3d at 704 (reversing motion to dismiss because plaintiff's doctors recommended more invasive tooth extraction procedures than other dentists, possibly due to monetary incentives), this deliberate indifference claim must fail.

A similar result is warranted for Plaintiff's claim that Defendant Korobkova was deliberately indifferent to his prior stomach injury. Plaintiff alleges that he suffers from something "like [untreated] hemoptysis," which makes him "split up blood," and possibly a lacerated kidney that causes blood in his urine. (SAC 9.) When Plaintiff informed Defendant Korobkova on October 25, 2016 of his condition, she allegedly told him that he "had nothing wrong." (*Id*.) For support, Plaintiff cites to a grievance filed almost 16 months after this incident. (*Id*; Opp. 14.) Ultimately, these facts alone do not establish that Defendant Korobkova's diagnosis was anything other than a professional medical judgement, and Plaintiff does not allege facts or provide another diagnosis to contradict her analysis.[1]

Although courts recognize a serious medical need to exist when a denial in treatment results in further deterioration, Plaintiff does not claim that any deterioration occurred. *See Chance v. Armstrong*, 143 F.3d 698 (2d Cir. 1998) (significant deterioration of inmate's tooth due to delay in cavity treatment); *Koehl v. Dalsheim*, 85 F.3d 86, 88 (2d Cir. 1996) (significant deterioration in inmate's eyesight precipitated further injuries). Plaintiff also fails to show that Defendant Korobkova "kn[ew] of and disregard[ed]" this risk. *Farmer v. Brennan,* 511 U.S. 825, 837 (1994).

---

[1] Plaintiff also cites to affidavits from inmates Josh Louder and Adam Phillips. Although Mr. Louder attests that Plaintiff requested sick call "everyday" but "sometimes would not get called," he does not identify who denied plaintiff sick call. (Opp. 19.) Mr. Louder also attests that, on February 24, 2018, Plaintiff showed him "a tissue full of blood that he spit up," for which Plaintiff was "rushed to the Infirmary" but "said the doctor . . . signed him out with no treatment." (*Id*.) Although this may have been a serious medical need, Mr. Louder again does not identify the doctor who refused treatment. Both Mr. Louder and Mr. Phillips further attest that Plaintiff showed them grievances of Defendant Korobkova "being Deliberately Indifferent," with Mr. Phillips identifying March 14, 2018 as one date on which Plaintiff did so. (*Id*. at 18.) Nevertheless, unspecified grievances do not provide additional facts to support Plaintiff's deliberate indifference claims.

In sum, Plaintiff's deliberate indifference claims against Defendant Korobkova are dismissed without prejudice.

### B.   Defendant Bentivegna

Plaintiff similarly claims that Defendant Bentivegna was deliberately indifferent to his injuries. This includes the H-Pylori infection that Plaintiff says he caught during his confinement in keeplock in December 2017 and exacerbated his stomach injury. (SAC 7.) Specifically, when he asked Defendant Bentivegna for help on February 14, 2018, Plaintiff alleges that Defendant Bentivegna merely stated that "none of your providers appear to have been able to solve your issue" instead of treating him. *Id*. Although Plaintiff cites to an affidavit from fellow inmate Adam Phillips for support (Opp. 18), his allegations remain largely vague and conclusory and thus fail to fulfill either prong of the deliberate indifference test.

Construing Plaintiff's pleadings liberally, as this Court must, Mr. Phillip's statements in the affidavit that the Medical Defendants also "denied [him] treatment" for his own H-Pylori infection urges this Court to consider whether Defendant Bentivegna engaged in a pattern of deliberate indifference. (Opp. 18.) Although "[i]t is well-settled in [the Second Circuit] that 'a series of incidents closely related in time . . . may disclose a pattern of conduct amounting to deliberate indifference to the medical needs of prisoners,'" a "single instance of medical care denied . . . may appear to be the product of mere negligence." *Todaro v. Ward*, 565 F.2d 48, 52 (2d Cir. 1977) (quoting *Bishop v. Stoneman*, 508 F.2d 1224 (2d Cir. 1974)). Courts have found a pattern of conduct to exist when numerous inmates allege denied treatment, which results in a "cumulation of incidents." *Bishop*, 508 F.2d at 1226. A pattern also is found where the prison medical department is afflicted by "systematic deficiencies," such as a lack of staff. *Todaro*, 565 F.2d 52. Neither condition is present here. Only Plaintiff and Mr. Phillips allege mistreatment

of their infections. Furthermore, it is unclear when Plaintiff received an H-Pylori test or who diagnosed him.

Plaintiff's deliberate indifference claim against Defendant Bentivegna is dismissed without prejudice.

### C.   Defendants Griffen and Collao

Plaintiff alleges that he told Defendants Griffen and Collao about his H-Pylori infection during keeplock superintendent rounds, but they did not help him receive treatment because they told Plaintiff that "usually there's no sick call on keeplock." (Opp. 4; SAC 8.) Plaintiff also claims that they were notified about his injuries through the grievance appeal process. (Opp. 4.)

In addition to medical personnel, the Eighth Amendment prohibits non-medical personnel from being deliberately indifferent to the medical needs of inmates by "intentionally deny[ing] or delay[ing] access to medical care." *Charles v. Orange County*, 925 F.3d 73, 85 (2d Cir. 2019). Nevertheless, Plaintiff's claims against Defendants Griffen and Collao do not meet the objective prong. Besides general assertions of pain, Plaintiff pleads no allegations related to the severity of this infection or its impact on him. These facts are insufficient to determine whether the infection amounted to a serious medical need. *See Robinson v. Edwards*, 2006 WL 1889900, at *10 (S.D.N.Y July 5, 2006) (noting that courts do not consider an H-Pylori infection to be a serious medical need); *see also Kee v. Hasty*, No. 01 Civ.2123(KMW)(DF), 2004 WL 807071, at *22 (S.D.N.Y. Apr. 14, 2004) ("bare allegations of mental suffering and/or physical 'pain' are, without more, insufficient to satisfy the stringent standard for pleading a serious injury"); *Martinez v. Aycock-West*, 164 F. Supp. 3d 502, 512 (S.D.N.Y. 2016).

Even if the infection was objectively serious, Plaintiff has not sufficiently pleaded that Defendants Griffen and Collao knew of its seriousness or risked substantial harm to Plaintiff by denying him access to medical care. Plaintiff's claims against Defendant Supt. Griffen also fail to

the extent that they rely on the grievance appeal process to impose liability. The receipt of a grievance does not establish supervisory liability unless the official responds to or acts upon it, and Plaintiff does not show that Defendant Griffen responded to or acted on the grievances. *Alvarado v. Westchester Cty.*, 22 F. Supp. 3d 208, 215 (S.D.N.Y. 2014); *see also Johnson*, 234 F. Supp. 2d at 363 (S.D.N.Y. 2002); *Harris v. Westchester Cty. Dept. of Corrections*, No. 06 Civ.2011 (RJS), 2008 WL 953616, at *9-10 (S.D.N.Y. Apr. 3, 2008).

In sum, Plaintiff's deliberate indifference claims against Defendants Griffen, Collao, and the Medical Defendants are dismissed without prejudice.

### III.    First Amendment Claims

Plaintiff alleges various claims sounding in the First Amendment. These include (1) retaliation claims against Defendants Griffen, Korobkova, and Staples, (2) a claim that Defendant Eckerson mishandled Plaintiff's grievance, and (3) a claim that Defendant Swain wrongly denied Plaintiff access to the courts by interfering with Plaintiff's legal mail. For the reasons set forth below, these claims all fail to state a plausible claim for relief.

#### A.    Retaliation Claims

Plaintiff claims that, after he filed grievances against the Medical Defendants, Defendants Griffen and Korobkova retaliated by denying him sick call. (SAC 5.) He further claims that Defendant Staples retaliated against him for other grievances alleging inadequate medical treatment by falsely placing him in keeplock and denying him sick call during his confinement.[2] (*Id*. 7-8.) To properly plead a First Amendment retaliation claim, a plaintiff must allege "(1) that

---

[2] Although Plaintiff's false keeplock claim is properly construed as a retaliation claim under the First Amendment, Defendants also address this issue separately as a false charges claim. They interpret Plaintiff's complaint as alleging that they filed false charges against him, which deprived him of a protected liberty interest and precipitated his confinement. (Mot. 10.) Plaintiff's pleadings, however, are devoid of facts that establish or support a false charges claim. Interpreted liberally, Plaintiff's false keeplock allegation instead raises a separate false confinement claim under the Fourth Amendment. This issue is addressed below in Section IV.

14

the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003). Courts must consider "claims of retaliation with skepticism and particular care" because they are "easily fabricated" and "any adverse action taken against a prisoner . . . can be characterized as a constitutionally proscribed retaliatory act." *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *rev'd on other grounds Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002). As Defendants concede that filing a grievance is a protected activity, and, interpreted liberally, confinement in keeplock and denial of sick call both can be considered adverse actions,[3] this Court need only address the last prong.

Plaintiff does not plead sufficient facts to establish a causal connection between his grievances and Defendants' alleged retaliatory conduct. To do so, a plaintiff must allege the retaliation in more than "wholly conclusory terms." *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983). If the only basis of a retaliation claim is "an adverse administrative decision," the allegation does not merit further investigation. *Id*. The time frame between the protected activity and alleged retaliatory conduct also must support an "inference of a causal relationship." *Dawes*, 239 F.3d at 493; *see Morales v. Mackalm*, 278 F.3d 126, 127 (2d Cir. 2002) (finding that the short, three-week time frame between plaintiff's grievance and transfer to multiple psychiatric centers supports "an inference that defendants had a retaliatory motive"). Other important factors include: (1) "the inmate's prior good disciplinary record;" (2) "vindication at a hearing on the matter; and" (3)

---

[3] For confinement as adverse action, see *Dawes*, 239 F.3d at 493; *see Wells v. Wade* No. 96 Civ. 1627 (SHS), 2000 WL 1239085, at *4 (S.D.N.Y. Aug. 31, 2000) (finding that the "filing of a frivolous misbehavior report that resulted in thirteen days of pre-hearing 'keeplock' confinement" is an adverse action). *See also Gill*, 389 F.3d at 384 (holding that "the filing of false misbehavior reports" resulting in "three weeks in keeplock" is an adverse action). For denial of sick call as adverse action, see *Olutosin v. Lee*, No. 14-CV-685 (NSR), 2016 WL 2899275, at *10 n.5 (S.D.N.Y. May 16, 2016) ("[G]eneral allegations of denial of medical care are sufficient to allege an adverse action."). *See also Walker v. Schriro*, No. 11 Civ. 9299 (JPO), 2013 WL 1234930 (S.D.N.Y Mar. 26, 2013) ("Denial of medical care that could address 'extreme pain' surely qualifies as an [adverse] action . . . .")

"statements by the defendant concerning his motivation." *Baskerville*, 224 F. Supp. 2d at 732 (citing *Colon v. Coughlin*, 58 F.3d 865, 872-873 (2d Cir. 1995)).

First, Plaintiff asserts that he was "later" denied sick call in retaliation for filing the September 26, 2016 grievance against Defendants Korobkova and Griffen for not providing his MRI results. (SAC 5.) Yet, Plaintiff fails to specify even one date on which such retaliation occurred, identify who retaliated against him, or provide the grievance he claims he filed regarding the alleged retaliation. Even accepting that Defendants Korobkova and Griffen were the responsible parties, this retaliation claim remains conclusory and does not establish an adequate time frame to support an inference of a causal relationship.

Second, Plaintiff asserts that, in retaliation for filing grievances against the Medical Defendants for insufficient medical treatment, Defendant Staples placed him in keeplock from December 12, 2017 to January 13, 2018. (SAC 7.) But Plaintiff does not plead facts to show how Defendant Staples connects to the Medical Defendants or why she would retaliate for alleged conduct in which she had no identifiable role. Nor does Plaintiff specify for which grievances Defendant Staples retaliated. The only applicable grievance, the September 26, 2016 grievance regarding Plaintiff's MRI request, lacks a sufficient temporal connection because Plaintiff filed it over a year prior to the alleged retaliatory conduct.

Third, Plaintiff alleges that Defendant Staples denied him sick call five times during his confinement in retaliation for grieving a previous sick call denial. (SAC 7; Opp. 20.) Plaintiff filed this particular grievance on August 30, 2017, three months before the alleged retaliatory conduct. The Second Circuit has found that as much as a six-month gap between the protected activity and the alleged retaliatory act can support an inference of a causal relationship. *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009). Yet, this six-month period was buttressed by the defendants' alleged verbal statements linking the retaliatory act to the protected activity. *Id*. When otherwise "wholly

conclusory," retaliation claims should be dismissed. *Edwards v. Horn*, No. 10 Civ. 6194(RJS)(JLC), 2012 WL 760172, at *18 (S.D.N.Y. March 8, 2012) (granting motion to dismiss because the plaintiff "aimed to pin a retaliatory motive not on the target of his protected activity, but on an entirely different Defendant"); *see also Sloan v. Mazzuca*, No. 04 CV 8266(KMK), 2006 WL 3096031, at *14 (S.D.N.Y. Oct. 31, 2006) (granting motion to dismiss because the four-month connection between protected activity and retaliatory act "only met the temporal proximity factor in the most rudimentary sense").

Here, despite the three-month temporal connection, Plaintiff's second retaliation claim against Defendant Staples is wholly conclusory. Plaintiff neither identifies who denied him sick call in his grievance nor explains how this connects to Defendant Staples' denial of sick call during keeplock. Even if Defendant Staples denied him sick call, Plaintiff's allegations still appear to be based only on the "adverse administrative decision" to withhold sick call. *Flaherty*, 713 F.2d at 13. Plaintiff does not allege any other facts to support his claim, such as evidence establishing his "good disciplinary record," "vindication at a hearing," or statements "concerning [Defendant's] motivation." *Baskerville*, 224 F. Supp. at 732 (citing *Colon v*, 58 F.3d at 872-873).

Accordingly, Plaintiff's retaliation claims against Defendants Griffen and Staples are dismissed without prejudice.

## B. Mishandling of Prison Grievances Claim

Plaintiff claims that Defendant Eckerson wrongly dismissed his grievance against Defendant Staples alleging false confinement instead of sending it to the Inmate Grievance Review Committee for review. (SAC 7.) Although prison officials cannot use retaliatory measures to suppress an inmate's First Amendment right to file grievances, "inmate grievance procedures are not required by the Constitution and therefore a violation of such procedures does not give rise to a claim under § 1983." *Cancel v. Goord*, No. 00 Civ. 2042 LMM, 2001 WL 303713, at *3 (S.D.N.Y

Mar. 29, 2001) (dismissing plaintiff's Section 1983 claim that, "by failing to process [his] grievances," prison officials "violated his First Amendment right of access to the courts and right to petition the government for redress"). Thus, Defendants' assertion that Plaintiff "has no constitutional right to a prison grievance procedure or to have his grievances investigated" is correct. (Mot. 10) (quoting *Hayes v. Cty. of Sullivan*, 853 F. Supp. 2d 400, 434 (S.D.N.Y. 2012)).

Plaintiff also alleges that his rights were violated under 42 U.S.C. § 1997(e)(a) ("Section 1997(e)(a)"), the Prison Litigation Reform Act of 1995 (PLRA). Section 1997(e)(a) requires prisoners to "exhaust" all "available" "administrative remedies" before bringing an action in Federal court under Section 1983. Liberally construed, Plaintiff appears to use the PLRA and two cases—*Jones v. Brock*, 549 U.S. 199 (2007) and *Messa v. Goord*, 652 F.3d 305 (2d Cir. 2011)— to argue that Defendants did not give him access to all available "administrative remedies" at Green Haven. (Opp. 6.) Plaintiff misinterprets Section 1997(e)(a) and the two cases.

Plaintiff cites to *Jones v. Brock*, 549 U.S. 199 (2007) for the proposition that "[i]nmates must complete the administrative review process in accordance with applicable procedural rules that are defined by the prison grievance process itself." (Opp. 6.) While this is true under Section 1997(e)(a), the applicable ruling from *Jones* is that failure to exhaust is an affirmative defense. *Jones*, 549 U.S. at 211-12. Similarly, Plaintiff cites to *Messa v. Goord*, 652 F.3d 305 (2d Cir. 2011) to show that "the exhaustion requirement is intended to provide prisons with a fair opportunity to correct th[eir] own errors." (Opp. 6.) But *Messa* actually holds that inmates have no "right to a jury trial on factual disputes regarding . . . [their] failure to exhaust administrative remedies as required by" Section 1997(e)(a). *Messa*, 652 F.3d at 308.

Correspondingly, Plaintiff's claim against Defendant Eckerson regarding the mishandling of his grievance is dismissed without prejudice.

C.    **Denial of Access to Courts Claim**

Plaintiff alleges that Defendant Swain denied him access to the courts by "forg[etting] to mail out . . . [his] Certified Mail Receipt" when Plaintiff tried to "bring service to the Attorney General," thereby intentionally allowing the statute of limitations on Plaintiff's legal claims to expire. (SAC 9.) For a claim for denial of access to the courts due to interference with legal mail to survive a motion to dismiss, a plaintiff must allege facts that show: (1) "that the defendant's alleged conduct was deliberate and malicious," and (2) "that the defendant's actions resulted in actual injury to the plaintiff such as the dismissal of an otherwise meritorious legal claim." *Cancel*, 2001 WL 303713, at *4 (citing *Lewis v. Casey*, 518 U.S. 343, 351 (1996)) (dismissing denial of access to courts claim because plaintiff did not allege that interference with his legal mail "prejudiced . . . a legal action he sought to pursue"; finding that "a delay in being able to work on one's legal action or communicate with courts" due to interference is not "a constitutional violation").

Plaintiff's alleged facts do not support his claim that Defendant Swain deliberately denied him access to the courts by mishandling his legal mail. Plaintiff asserts that Defendant Swain purposely held Plaintiff's mail until the statute of limitations on his legal claims expired under the pretense that Plaintiff incorrectly filled out the requisite disbursement authorization. (Opp. 6.) In Plaintiff's Exhibit H, however, an unnamed party apologies to Plaintiff for "forg[etting]" to tell him that he needed to fill out the authorization. (Opp., Ex. H, at 17.) This apology at most shows carelessness, even if the unnamed party was Defendant Swain. In any event, Plaintiff also fails to allege that Defendant Swain's actions prejudiced an otherwise meritorious legal claim.

Interpreted liberally, Plaintiff suggests that this event was one instance of an ongoing effort to tamper with his mail. Two or more "incidents of mail tampering could constitute an actionable

violation (1) if the incidents suggested an ongoing practice of censorship unjustified by a substantial government interest, or (2) if the tampering unjustifiably chilled the prisoner's right of access to the courts." *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003) (citing *Washington v. James*, 782 F.2d 1134, 1139 (2d Cir. 1986)). Here, Plaintiff fails to establish either condition. He does not cite any other event that would indicate that Defendants were engaged in an "ongoing practice" of interfering with his mail or that the interference "chilled [his] right of access to the courts." *Davis*, 320 F.3d at 351 (citing *Washington*, 782 F.2d at 139).

Plaintiff's denial of access to the courts claim is dismissed without prejudice.[4]

## IV.   False Imprisonment Claim

Plaintiff alleges that Defendant Staples "falsely put" him in keeplock in December 2017 and that Defendant Murphy knew of his false confinement but took no action. (SAC 7.) He also asserts that Defendant Eckerson suppressed a grievance protesting his confinement. (*Id.*) Construed liberally, these false keeplock claims give rise to a false imprisonment claim under the Fourth Amendment.

The elements of such a claim under Section 1983 are substantially similar to those under New York State law, requiring plaintiff to show that (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged. *See Bernard v. United States*,

---

[4] In a footnote in his opposition, Plaintiff seems to allege that papers for this case, including exhibits and grievances, "were taken" on November 21, 2019 when he travelled from SCF to Great Meadow for legal proceedings in an unrelated civil action. (Opp. 5, n.1.) Plaintiff requests "more time to receive" these papers. (*Id.*) Read liberally, these facts raise another denial of access to courts claim, as Plaintiff's language suggests that his legal material was taken deliberately. *Morello v. James*, 810 F.2d 344, 347 (2d Cir. 1987) (citing *Daniels v. Williams*, 474 U.S. 327 (1986)). To establish a constitutional violation, Plaintiff must show that the alleged deprivation of his legal papers "actively hindered his efforts to pursue a legal claim," in that it prevented him from "raising an argument or asserting a claim" rather than merely frustrated his ability to draft a more persuasive argument for an existing claim. *Covino v. Reopel*, No. 96-2295, 1997 WL 138856, at *1 (2d Cir. Mar. 18, 1997); *Arce v. Walker*, 58 F. Supp. 2d 39, 43 (W.D.N.Y. 1999). Yet, Plaintiff does not do so, nor does he distinguish which exhibits or grievances he is missing. Plaintiff does not even indicate who took his papers. None of the named Defendants can be involved, as this incident took place at either Great Meadow or SCF.

25 F.3d 98, 102 (2d Cir. 1993); *Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003); *Hygh v. Jacobs*, 961 F.2d 359, 366 (2d Cir. 1992). A plaintiff fulfills the fourth prong if he "sufficiently plead[s] that he ha[s] been subjected to punitive segregation [1] for no legitimate reason and [2] without the rudimentary protections of due process." *Willey v. Kirkpatrick*, 801 F.3d 51, 71 (2d Cir. 2015) (citing *Gittens v. State of New York*, 132 Misc.2d 399, 504 N.Y.S.2d 969, 972 (N.Y. Ct. Cl. 1986)); *see also Jackson v. N.Y. Dept. of Corr. Servs.*, 994 F. Supp. 219, 224 (S.D.N.Y 1998) (placement in keeplock for thirteen days did not give rise to a false imprisonment claim because plaintiff was confined for a brief period for safety reasons and was offered a hearing to dispute the confinement). Plaintiff's alleged facts, interpreted liberally, fulfill the first three factors. Regarding the fourth factor, however, Plaintiff does not suggest that he was imprisoned "for no legitimate reason." The only basis that Plaintiff alleges for his confinement is Defendant Staples' retaliatory act of placing him in keeplock him for filing the August 30, 2017 grievance. For the reasons discussed above, this retaliation claim fails.

In any event, Plaintiff also does not satisfy the fourth factor because he fails to state a cause of action for denial of due process. New York law governing administrative confinement creates a recognized liberty interest of which inmates may not be deprived without due process. Due process can be satisfied by either a hearing or "an informal, nonadversary review [within five days of confinement] of the information supporting [the] administrative confinement." *Soto v. Walker*, 44 F.3d 169, 172 (2d Cir. 1995) (quoting *Hewitt v. Helms*, 459 U.S. 460, 470 (1983)); *see also Russell v. Coughlin*, 910 F.2d 75, 78 (2d Cir. 1990); *Santana v. Keane*, 949 F.2d 584, 585 (2d Cir. 1991).

Plaintiff, however, neither references a hearing nor any other due process review of his confinement, much less any perceived deficiencies with such a process. He alleges only that he was unable to make himself heard and that the interview with Defendant Eckerson about his complaint on staff misconduct relating to his confinement never occurred. (SAC 7.) Moreover,

Defendants do not mention a hearing or some other informal inquiry. Without more, this Court lacks sufficient facts to construe Plaintiff's allegations as stating a claim for denial of due process or to assess whether Defendant Eckerson's investigation qualifies as an informal, non-adversary review of Plaintiff's confinement—and if so, whether it satisfies the due process requirement.

In sum, Plaintiff's alleged facts do not fulfill the fourth prong of the requisite test. As such, Plaintiff's false imprisonment claim under the Fourth Amendment is dismissed without prejudice.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED. The Court, however, grants Plaintiff leave to file a third amended complaint that is consistent with this Opinion and Order. If he chooses to do so, Plaintiff has until October 12, 2020 to file his third amended complaint. An Amended Civil Rights Complaint form is attached to this Order. Defendants are then directed to answer or otherwise respond by November 12, 2020. Failure to file a third amended complaint within the time allowed, and without good cause shown, will result in the dismissal of Plaintiff's claims with prejudice.

The Clerk of Court is respectfully directed to terminate the motion at ECF No. 50. The Clerk of Court is further respectfully directed to mail a copy of this Opinion & Order to the *pro se* Plaintiff at his last known address listed on ECF, as well as to the address below, and to show proof of service on the docket.

Dated:   August 13, 2020                                      SO ORDERED:
        White Plains, New York


NELSON S. ROMÁN
United States District Judge

Mail To: Chauncey Girard
DIN No. 11-A-1352
Southport Correctional Facility
P.O. Box 2000
Pine City, N.Y. 14871

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

_____

Write the full name of each plaintiff.

_____CV_____

(Include case number if one has been assigned)

-against-

**COMPLAINT**

(Prisoner)

_____

_____

_____

Do you want a jury trial?
☐ Yes    ☐ No

Write the full name of each defendant. If you cannot fit the names of all of the defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed above must be identical to those contained in Section IV.

---

**NOTICE**

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

---

## I.     LEGAL BASIS FOR CLAIM

State below the federal legal basis for your claim, if known. This form is designed primarily for prisoners challenging the constitutionality of their conditions of confinement; those claims are often brought under 42 U.S.C. § 1983 (against state, county, or municipal defendants) or in a "*Bivens*" action (against federal defendants).

☐   Violation of my federal constitutional rights

☐   Other: _____

## II.     PLAINTIFF INFORMATION

Each plaintiff must provide the following information. Attach additional pages if necessary.

_____

First Name                    Middle Initial              Last Name

_____

State any other names (or different forms of your name) you have ever used, including any name you have used in previously filing a lawsuit.

_____

Prisoner ID # (if you have previously been in another agency's custody, please specify each agency and the ID number (such as your DIN or NYSID) under which you were held)

_____

Current Place of Detention

_____

Institutional Address

_____

County, City                              State                    Zip Code

## III.     PRISONER STATUS

Indicate below whether you are a prisoner or other confined person:

☐   Pretrial detainee
☐   Civilly committed detainee
☐   Immigration detainee
☐   Convicted and sentenced prisoner
☐   Other: _____

Page 2

## IV.   DEFENDANT INFORMATION

To the best of your ability, provide the following information for each defendant. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are identical to those listed in the caption. Attach additional pages as necessary.

Defendant 1:

First Name                     Last Name                        Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City                          State                 Zip Code

Defendant 2:

First Name                     Last Name                        Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City                          State                 Zip Code

Defendant 3:

First Name                     Last Name                        Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City                          State                 Zip Code

Defendant 4:

First Name                     Last Name                        Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City                          State                 Zip Code

Page 3

## V.    STATEMENT OF CLAIM

Place(s) of occurrence: _____

Date(s) of occurrence: _____

**FACTS:**

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and how each defendant was personally involved in the alleged wrongful actions. Attach additional pages as necessary.

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

_____

_____

_____

_____

_____

_____

_____

_____

**INJURIES:**

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

_____

_____

_____

_____

_____

## VI.   RELIEF

State briefly what money damages or other relief you want the court to order.

_____

_____

_____

_____

_____

_____

_____

## VII.   PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I understand that if I file three or more cases while I am a prisoner that are dismissed as frivolous, malicious, or for failure to state a claim, I may be denied *in forma pauperis* status in future cases.

I also understand that prisoners must exhaust administrative procedures before filing an action in federal court about prison conditions, 42 U.S.C. § 1997e(a), and that my case may be dismissed if I have not exhausted administrative remedies as required.

I agree to provide the Clerk's Office with any changes to my address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| | |
|---|---|
| Dated | Plaintiff's Signature |

| | | |
|---|---|---|
| First Name | Middle Initial | Last Name |

Prison Address

| | | |
|---|---|---|
| County, City | State | Zip Code |

Date on which I am delivering this complaint to prison authorities for mailing: _____