UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHAUNCEY GIRARD,

                    Plaintiff,

        -against-                                    Case No. 18 CV 2026
                                                     Hon. Nelson S. Román
DEP. COLLAO, *et al.*,

                    Defendants.

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS THE FOURTH AMENDED COMPLAINT**

Rickner PLLC
14 Wall Street, Suite 1603
New York, NY 10005

On the Brief:

        Stephanie Panousieris

# TABLE OF CONTENTS

**TABLE OF CONTENTS** ................................................................................................**i**

**TABLE OF AUTHORITIES** .......................................................................................**ii**

**PRELIMINARY STATEMENT** ...................................................................................**1**

**THE FACTS ALLEGED** ..............................................................................................**1**

**ARGUMENT** ..................................................................................................................**3**

   I.      LEGAL STANDARD ........................................................................................3

   II.     PLAINTIFF HAS PLAUSIBLY PLED HIS EIGHTH AMENDMENT CLAIMS ..........4

      A.  Eighth Amendment Standard ..........................................................................4

      B.  Defendants Korobkova and Bentvena Acted with Deliberate Indifference By Repeatedly Failing to Render Care That Actually Addressed Plaintiff's Injuries and Ongoing Pain and Suffering ..........................................................................5

      C.  Defendants Murphy and Staples Acted With Deliberate Indifference By Intentionally Interfering With Plaintiff's Medical Care ........................................................7

      D.  Defendants Callao and Griffin Acted With Deliberate Indifference By Unreasonably Interfering With Plaintiff's Access to Medical Care ......................................8

      E.  The Adequacy of The Care Rendered to Plaintiff and Any Steps Taken By Defendants to Effectuate That Care Are Questions of Fact Requiring Discovery ............................9

**CONCLUSION** ...........................................................................................................**10**

# TABLE OF AUTHORITIES

## CASES

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ...................................................................3

*Ashcroft*, 556 U.S ............................................................................................................3

*Bethel v. Wolff*, 14 cv 6519, WL 568325 (S.D.N.Y. Feb. 10, 2017) ..............................4

*Boykin v. KeyCorp*, 521 F.3d 202, 216 (2d Cir. 2008) ..................................................4

*Branham v. Meachum*, 77 F.3d 626 (2d Cir. 1996) .......................................................9

*Chance v. Armstrong*, 143 F.3d 698 (2d Cir. 1998) ..........................................4, 6, 7, 9

*Erickson v. Pardus*, 551 U.S. 89, 94 (2007) .................................................................4

*Estelle v. Gamble*, 429 U.S. 97 (1976) ...............................................................4, 7, 8

*Hathaway v. Coughlin*, 37 F.3d 63 (2d Cir. 1994) ..................................................4, 5, 6

*Hogan v. Fischer*, 738 F.3d 509, 514 (2d Cir. 2013)......................................................3

*Jones v. Westchester Cnty. Dep't of Corr. Med. Dep't*, 557 F. Supp. 2d 415 (S.D.N.Y. 2008)...6, 9

*Kassman v. Qualified Servs*., 957 F. Supp. 1307, 1308 (E.D.N.Y. 1997) ......................4

*Lloyd v. Lee*, 570 F.Supp.2d 556 (S.D.N.Y. 2008)........................................................5

*Marino v. Humphrey*, 05 cv. 6571, at *3 (S.D.N.Y. Sept. 27, 2006).............................9

*McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir.1999) ............................................10

*Salahuddin v. Goord*, 467 F.3d 263 (2d Cir. 2006) ....................................................4, 5

*Satchell v. Dilworth*, 745 F.2d 781, 785 (2d Cir.1984) .................................................3

*Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008).......................4

*Smith v. Carpenter*, 316 F.3d 178 (2d Cir. 2003) ......................................................5, 9

*Stevens v. Goord*, 535 F.Supp.2d 373 (S.D.N.Y. 2008) ...............................................5

**RULES**

Fed. R. Civ. P. 8(f)................................................................................................................3

Fed. R. Civ. P. 12(b)(6)......................................................................................................3, 9

## PRELIMINARY STATEMENT

Plaintiff brings this action against several prison officials who denied him adequate medical care for his serious injuries during his time in custody at Green Haven Correctional Facility. The medical Defendants, Korobkova and Bentivenga, knew that Plaintiff was in ongoing (and worsening) pain following injuries he sustained in a 2014 assault, but they repeatedly failed to render adequate diagnostic care or manage Plaintiff's pain, and even refused his most basic requests for sick call and a permit that would disallow prison officials from further injuring him through certain cuffing and search procedures. Instead, the medical Defendants opted to "treat" Plaintiff with cursory check-ups, often dismissing him altogether by concluding, without proper examination, that he was fine. But Plaintiff was not fine. He had serious injuries to his stomach, back, and shoulder, and the shoulder injury required surgery that was delayed significantly by Defendants' indifference toward Plaintiff's suffering.

The non-medical Defendants further exacerbated these injuries by intentionally interfering with Plaintiff's medical care in retaliation for his complaints of pain arising from an officer-inflicted assault. As a result of Defendants' actions, Plaintiff was caused to suffer—indeed, he continues to suffer—immense physical and emotional pain, including further injury to his shoulder, while now requires a second surgery, which he will receive later this year. Thus, however inartfully pled, Plaintiff's fourth *pro se* pleading contains facts sufficient to give rise to the plausible inference that each of these actors acted with the requisite deliberate indifference necessary to state cognizable Eighth Amendment claims.

## THE FACTS ALLEGED

In December of 2014, Plaintiff was assaulted by staff at Auburn Correctional Facility, which resulted in a serious shoulder injury requiring surgery and significant medical follow-up, as

well as injuries to Plaintiff's back and stomach.[1] *See* Fourth Amended Complaint ("FAC") at 5. Plaintiff was also injured in the stomach and back, but was repeatedly denied adequate diagnostic testing by Defendant Korobkova, who told Plaintiff he was fine without providing or facilitating the diagnostic testing necessary to determine the extent of Plaintiff's injuries. *Id*. Plaintiff asked Korobkova on multiple occasions for a "permit" disallowing corrections staff from cuffing him in a manner that would further exacerbate his shoulder injury, and for physical therapy to assist in his recovery. *Id*. These requests were summarily denied, and his injuries worsened significantly as a result. *Id*. Plaintiff's requests for diagnostic testing on his stomach and back were similarly ignored by Korobkova. *Id*.

This inadequate medical care persisted for years during Plaintiff's incarceration at Green Haven, in the face of multiple requests for further evaluation and physical therapy. *Id*. In 2016, while Plaintiff was being held in "keeplock" (highly restrictive) conditions at Green Haven Correctional Facility, he reported this need for further medical evaluation and care for his ongoing pain to Defendants Callao and Griffin, who made rounds in the area. *Id*. Plaintiff told Callao and Griffin about his efforts to gain care from a second doctor—Bentivenga—who was ignoring Plaintiff's letters to medical and sick call requests, and told both officers about the stomach issues he was having, which were ignored by Korobkova. *Id*. Neither Calleo nor Griffin made any effort to get Plaintiff the care he needed. *Id*. Bentivenga, like Korobkova, refused to issue a permit limiting the way in which corrections staff could handle or cuff Plaintiff to avoid further injury. *Id*. Bentivenga similarly denied Plaintiff's requests for diagnostics and physical therapy when his symptoms and pain worsened further. *Id*.

---

[1] The 2014 assault itself is not pled as an independent claim in this matter. Instead, Defendants' repeated and knowing denial of adequate medical care to Plaintiff following this assault and Plaintiff's transfer to Green Haven Correctional Facility is the target subject matter of Plaintiff's *pro se* complaint.

Plaintiff was forced to grieve this lack of medical care multiple times before he was sent to a specialist, who recommended surgery, which he finally received on February 23, 2017—over two years after the assault that caused the original injury. *Id*. Even after the surgery, while Plaintiff was recovering, Korobkova continued to deny Plaintiff a medical restriction permit that would prevent corrections staff from reinjuring his shoulder, which, in fact, they did, further exacerbating his injury. *Id*. Plaintiff now requires a second surgery as a result of inadequate follow-up care, including a lack of physical therapy and the rough handling of Plaintiff by corrections officers in the absence of a permit restricting the ways in which the officers cuff and search Plaintiff. *Id*. at 8. The significant delay in rendering adequate diagnostic care, failure to manage Plaintiff's worsening pain and symptoms, and the failure to issue a medical permit restricting the use of Plaintiff's shoulder, caused the injury to further degrade, resulting in numbness and loss of range of motion in Plaintiff's shoulder—culminating in the need for a second surgery—could have been avoided had Defendants meaningfully responded to Plaintiff's complaints. *Id*.

## ARGUMENT

### I. LEGAL STANDARD

To survive a Rule 12(b)(6) motion, a complaint need only "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim is plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Hogan v. Fischer*, 738 F.3d 509, 514 (2d Cir. 2013) (quoting *Ashcroft*, 556 U.S. at 678). Thus, a court "should assume the[] veracity [of the allegations] and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft*, 556 U.S. at 679.

Moreover, "a *pro se* litigant should be afforded every reasonable opportunity to demonstrate that he has a valid claim," *see Satchell v. Dilworth*, 745 F.2d 781, 785 (2d Cir.1984),

as the "law should not be construed to the detriment of *pro se* litigants." *Kassman v. Qualified Servs.*, 957 F. Supp. 1307, 1308 (E.D.N.Y. 1997); Fed. R. Civ. P. 8(f) ("All pleadings shall be so construed as to do substantial justice"). Such liberal construal of a pleading is particularly important where, as here, "the *pro se* plaintiff alleges that h[is] civil rights have been violated." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Thus, "dismissal of a *pro se* claim as insufficiently pleaded is appropriate only in the ***most unsustainable of cases***." *Boykin v. KeyCorp*, 521 F.3d 202, 216 (2d Cir. 2008) (emphasis added); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) ("a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.").

## II.   PLAINTIFF HAS PLAUSIBLY PLED HIS EIGHTH AMENDMENT CLAIMS

### A.  Eighth Amendment Standard

"In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.'" *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). First, the deprivation at issue must be sufficiently serious. *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994). Second, the defendant must act with deliberate indifference. *Id*. "An official acts with the requisite deliberate indifference when that official knows of and disregards an excessive risk to inmate health or safety." *Chance*, 143 F.3d at 702 (quotations omitted).

"Courts distinguish between situations where no medical attention is given and situations where medical attention is given, but is objectively inadequate." *Bethel v. Wolff*, 14 cv 6519, WL 568325, at *8, (S.D.N.Y. Feb. 10, 2017). "In the former, the Court need only 'examine whether the inmate's medical condition is sufficiently serious.'" *Id*. (*quoting Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006). "When the basis for a prisoner's Eighth Amendment claim is a temporary delay or interruption in the provision of otherwise adequate medical treatment, it is

appropriate to focus on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone in analyzing whether the alleged deprivation is, in objective terms, sufficiently serious, to support an Eighth Amendment claim." *Smith v. Carpenter*, 316 F.3d 178, 185–86 (2d Cir. 2003).

### B. Defendants Korobkova and Bentvena Acted with Deliberate Indifference By Repeatedly Failing to Render Care That Actually Addressed Plaintiff's Injuries and Ongoing Pain and Suffering

Plaintiff alleges that Defendants Korobkova and Bentvena (1) failed to render him adequate diagnostic care, delaying the treatment he needed; (2) denied him access to necessary physical therapy, both before and after his 2017 surgery; (3) did not meaningfully address complaints of worsening pain and a loss of range of motion in his shoulder, or his back and stomach issues; (4) and refused to issue a permit restricting the ways in which corrections staff could handle and cuff Plaintiff in the regular course of prison procedures—procedures which ultimately caused further deterioration to Plaintiff's shoulder. Each of these failures are cognizable constitutional claims.

A failure to render adequate or timely diagnostic care resulting in increased pain or further injury is, itself, a cognizable claim. *See, e.g., Hathaway*, 37 F.3d at 68 (finding that a jury could find deliberate indifference where "[t]he course of treatment [the incarcerated individual] received clearly did not alleviate his suffering."). For example, in *Lloyd v. Lee*, this District found sufficient facts to infer a constitutional claim where an incarcerated patient was "denied an MRI for months and [], as a consequence, his injury was not properly diagnosed and his surgery was unreasonably delayed." 570 F.Supp.2d 556, 568 (S.D.N.Y. 2008). Rendering inadequate medical care—that is, care that does not actually address the injury or ailment complained of—may also amount to deliberate indifference. *See Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006) (quotations omitted) ("[F]ailing to take reasonable measures in response to a medical condition can lead to liability."); *see also Stevens v. Goord*, 535 F.Supp.2d 373, 388 (S.D.N.Y. 2008) ("judgments that

have no sound medical basis . . . and appear designed simply to justify an easier course of treatment (in this case no treatment) may provide a basis of a[n] [Eighth Amendment] claim.").

This is not the case, as Defendants contend, where a medical professional chose a reasonable treatment plan over an alternative course of treatment that may have been preferred by the patient. This is a case where the medical Defendants delivered woefully insufficient care, consciously choosing ineffective (or no) care in lieu of adequate diagnostics, preventative care, pain management, and rehabilitative care to ensure that Plaintiffs' injuries were healing and not worsening. *Chance*, 143 F.3d at 703 ("a physician may be deliberately indifferent if he or she consciously chooses an easier and less efficacious treatment plan.") (quotations omitted); *Jones v. Westchester Cnty. Dep't of Corr. Med. Dep't*, 557 F. Supp. 2d 408, 415 (S.D.N.Y. 2008) ("one could conclude that the alleged unreasonable care caused Plaintiff to suffer, or at least exacerbated, a 'serious medical condition.'").

Similarly, Korobkova acted with the knowledge that Plaintiff's conditions were deteriorating and would continue to do so absent proper intervention—in fact, it was Plaintiff who when through the grievance process to obtain MRI results "to show [] Korobkova that [he] had a serious medical issue that needed [s]urgery," because his repeated requests for further care were being ignored. FAC at 5 (alleging that Korobkova send Plaintiff away without care despite "continuously going to medical by emergency Sick Call."); *see Hathaway*, 37 F.3d at 67 (finding that a rational jury could find deliberate indifference in a two-year delay between discovery of an injury and medical staff ordering a re-evaluation to determine the necessity of surgery). The same was true for Bentivenga, who Plaintiff wrote to and visited for assistance, explaining his medical conditions and the issues he was experiencing with his stomach, back, and shoulder. FAC at 5.

Plaintiff specifically warned both Korobkova and Bentivenga that he needed a permit

limiting how officers could handle him during cuffing and search procedures, because these procedures were causing additional injury. FAC at 5–8. He alleges that both medical Defendants knew of the substantial risk of harm to Plaintiff if his injuries were not properly treated—including limiting how Plaintiff's shoulder would be manipulated by staff—but that they failed to act reasonably in the face of that knowledge. *Id*. at 7 ("Korobkova "kn[ew] that something was wrong and the right thing to so and she chose not to do it."); *id*. at 8 (alleging that the medical Defendants were in a "unique position to prevent the harm [by issuing a permit] . . . [but their] conduct made the injuries worse."); *id*. (alleging that the failure to render adequate care has caused prolonged injuries, resulting in increased pain and suffering). Neither medical professional responded meaningfully to Plaintiff's complaints and requests for years, leaving him to suffer as his stomach, back, and shoulder injuries deteriorated. FAC at 5 ("nothing was done by anyone to resolve these issues"); *id*. at 8 (Korobkova and Bentivegna "breached th[eir] duty by injuring [Plaintiff] more.").

### C. Defendants Murphy and Staples Acted With Deliberate Indifference By Intentionally Interfering With Plaintiff's Medical Care

The claims against Defendants Murphy and Staples are cognizable under the Eighth Amendment specifically because Plaintiff alleges that each officer acted *with the purpose* of interfering with his medical care. *See, e.g., Chance*, 143 F.3d at 704 (holding that an "allegation of ulterior motives, if proven true, would show that the defendants had a culpable state of mind"). For purposes of assessing the requisite state of mind, it does not matter "whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104–05. Rather than deny requests for medical care as the two medical Defendants did, Murphy and Staples's interference came in the form of issuing a disciplinary ticket and confining Plaintiff to keeplock, where his requests for medical

7

care were subsequently ignored by Defendants Callao and Griffin. *Id*. at 5 (alleging that Murphy and Staples "purposefully put a false ticket on [Plaintiff] . . . [to] deny [him] medical attention" in retaliation for complaining of the officer-inflicted injuries.); *id*. at 6 (alleging that the discipline was "adverse action to keep to proper medical care from [Plaintiff]").[2]

For these Defendants, their intent was to punish Plaintiff for his complaints and further inhibit his access to the care he needed, which they accomplished by putting Plaintiff into keeplock. This unreasonable delay in care further exacerbated Plaintiff's suffering, making both Defendants proper parties against whom Plaintiff may sustain his Eighth Amendment Claims.

### D. Defendants Callao and Griffin Acted With Deliberate Indifference By Unreasonably Interfering With Plaintiff's Access to Medical Care

Defendants Callao and Griffin also exhibited the kind of indifference envisioned by *Estelle* in that they "intentionally den[ied] or delay[ed] [Plaintiff's] access to medical care" when they refused to respond to his complaints of pain and reports that the medical Defendants were ignoring the same while Plaintiff was in keeplock. 429 U.S. at 104–05; *see also* FAC at 5 (alleging that Plaintiff informed Callao and Griffin that he needed medical attention and showed them his letters to Bentivegna). But neither officer took Plaintiff to medical or had a nurse or doctor come to address Plaintiff's complaints, despite frequenting the area during their security rounds, and Plaintiff's repeated requests for assistance. FAC at 5. If true, which the Court must presume at this stage, these allegations evidence Callao and Griffin's complete lack of recognition of Plaintiff's suffering and the absence of *any* response to that suffering, let alone a reasonable response. This is sufficient to state a claim of deliberate indifference against these officers.

---

[2] While Plaintiff discusses the "false ticket" and disciplinary sanction imposed on him by these officers, the gravamen of his claims sound in the Eighth Amendment; he does not directly challenge the procedures implemented during the disciplinary hearing process. Instead, he alleges that Murphy and Staples acted in concert to retaliate against Plaintiff *with the purpose* of denying him medical care for his injuries, which were sustained in an officer-inflicted assault. FAC at 5.

**E. The Adequacy of The Care Rendered to Plaintiff and Any Steps Taken By Defendants to Effectuate That Care Are Questions of Fact Requiring Discovery**

Whether the minimal steps taken by *any* of these Defendants were constitutionally adequate simply cannot be decided on the pleadings; these are questions of fact inappropriate for summary adjudication. *See generally Jones*, 557 F. Supp. at 416 (denying pre-answer motion to dismiss where "[m]any of the material questions in this case, such as, 'What care is reasonable in these circumstances,' and 'What was the Defendants' mental state . . .' are not ripe for adjudication on the basis of the complaint and its appended materials."). In *Chance*, for example, the Second Circuit emphasized the difference between dismissal under Fed. R. Civ. P. 12(b)(6) and dismissal at summary judgment, after the plaintiff has been afforded ample opportunity to develop an evidentiary record in support of his claims:

> At the 12(b)(6) stage, '[t]he issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims.' Indeed it may appear on the face of the pleading that a recovery is very remote and unlikely, but that is not the test.

*Chance*, 143 F.3d at 701 (*quoting Branham v. Meachum*, 77 F.3d 626, 628 (2d Cir. 1996)); *see also Diaz v. Smith*, . Because the issue of "[w]hether a course of treatment was the product of sound medical judgment, negligence, or deliberate indifference depends on the facts of the case," further discovery is necessary to establish if Defendants took adequate steps to address Plaintiff's medical needs, or if the cursory care he was afforded was constitutionally sufficient. *Id*. at 703.

Plaintiff, like the litigant in *Chance*, "has alleged facts that are not impossible to prove and that, if demonstrated, would state a legally cognizable claim." *Id*. Thus, taking Plaintiff's allegations as true, and affording him every favorable inference his *pro se* pleading may raise, he has stated viable Eighth Amendment claims, and he should be permitted to proceed through discovery. *See generally Marino v. Humphrey*, 05 cv. 6571, at *3 (S.D.N.Y. Sept. 27, 2006) ("Pro se pleadings are to be read liberally and interpreted to *'raise the strongest arguments they*

*suggest.*'") (quoting *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir.1999) (emphasis added)).

## CONCLUSION

WHEREFORE, Plaintiff respectfully requests that Defendants' Motion to Dismiss the Fourth Amended Complaint be denied, and he be permitted to further strengthen and refine his claims through the discovery and with the assistance of newly obtained counsel.

Dated:  New York, New York
        January 30, 2023

Rickner PLLC

By:

Stephanie Panousieris

14 Wall Street Suite 1603
New York, New York 10279
Phone: (212) 300-6506
Fax: (888) 390-5401
*Attorneys for Plaintiff*

To:

All parties via ECF